IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Barnes,
                Petitioner           :
                                  :
        v.                      :    No. 130 C.D. 2024
                                  :
Pennsylvania Parole Board,      :    Submitted: July 7, 2025
                Respondent    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: February 3, 2026


Stephen Barnes (Petitioner), *pro se*,[1] petitions for review of the Pennsylvania Parole Board's (Board) Response (mailed on January 12, 2024) to his request for administrative relief (received on July 6, 2023, along with additional correspondence) from the Board's May 23, 2023 decision (mailed on June 1, 2023). The Board's January 12, 2024 decision affirmed the May 23, 2023 panel decision

---

[1] Counsel was appointed to represent Petitioner by order dated March 13, 2024. After Petitioner read his counsel's brief dated July 24, 2024, filed in this case, counsel received from Petitioner a Motion to Remove Appointed Counsel advising counsel that Petitioner wished to proceed *pro se.* Upon receiving the Motion, counsel filed an Application to Withdraw as Counsel on August 20, 2024. On August 27, 2024, this Court issued an order striking counsel's brief and directing the Prothonotary to strike counsel from the Docket and designate Petitioner as representing himself.

recalculating Petitioner's maximum term after recommitting him as a convicted parole violator (CPV). It also denied his claim that the Board violated his due process rights by providing him with defective notice of his parole revocation hearing (Notice).

## I. **Background**

The relevant facts and procedural history of the case are as follows. Petitioner is currently an inmate at a State Correctional Institution (SCI). On January 29, 1992, Petitioner pled guilty to third degree murder and to possessing an instrument of crime and was sentenced to between 11 years, six months and 23 years, with a minimum sentence date of September 30, 2012, and a maximum sentence date of March 30, 2024. (Certified Record (C.R.) at 1-2, 7.) On October 4, 2012, the Board released Petitioner on parole. (C.R. at 4.) Petitioner was provided with and signed a statement of the conditions governing his parole, which notified him of the following condition:

> If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

(C.R. at 8.) On March 5, 2013, the City of Pittsburgh Police arrested Petitioner and charged him with new criminal offenses, which included possession of controlled substances with intent to deliver and possession of a controlled substance by a person not registered. (C.R. at 41.) He was convicted of the new charges and sentenced on March 27, 2013, to serve six months' probation. (C.R. at 11.) On June 25, 2013, the Board recommitted Petitioner to an SCI as a CPV to serve six months of

2

backtime.[2]  (C.R. at 11-13.)  The Board recalculated his new maximum sentence date to be August 29, 2024.  (C.R. at 13.)

In a decision recorded on November 4, 2015, the Board again granted Petitioner parole and he was released on December 7, 2015.  (C.R. at 19-20, 22.)  As a condition of his parole, Petitioner was again notified that if he were to be convicted of a crime while on parole/reparole, the Board could recommit him to serve the balance of his sentence, with no credit for the time he was at liberty on parole.  (C.R. at 23.)  At the time of his release, Petitioner owed 3,188 days on his original sentence.  (C.R. at 19, 121-22.)

On September 12, 2016, Petitioner was arrested and charged with the manufacture, delivery or possession with intent to manufacture or deliver a controlled substance, intent to possess a controlled substance by a person not registered, and use or possession of drug paraphernalia.  (C.R. at 41.)  From September 16, 2016, to September 20, 2017, Petitioner was detained by the Board pending disposition of his criminal charges.  (C.R. at 29, 33, 39.)  The September 12, 2016 charges were ultimately dismissed and Petitioner was again released on parole.  (C.R. at 29-30, 121-22.)

Petitioner was at liberty on parole from September 20, 2017, until May 11, 2018, when federal drug enforcement authorities (DEA) arrested him for drug possession with intent to distribute.[3]  (C.R. at 32, 38, 41.) The Board lodged its detainer against Petitioner on May 14, 2018.  (C.R. at 31.)  On May 17, 2018,

---

[2] "Backtime" is the amount of time which the parolee must serve before he may again be eligible for parole.  *Krantz v. Pennsylvania Board of Probation and Parole*, 483 A.2d 1044, 1047 (Pa. Cmwlth. 1984).

[3] Petitioner was indicted in the United States District Court for the Western District of Pennsylvania, docket number 2:18CR139 on p. 9.  (C.R. 139.)

3

Petitioner waived his right to a detention hearing. (C.R. at 75.) On February 18, 2020, Petitioner pled guilty to two counts of the federal indictment and was sentenced to seventy-five months' incarceration and four years of supervised release, to run concurrently. (C.R. at 39, 41.) On February 14, 2023, Petitioner was returned from federal custody to the custody of the Department of Corrections (DOC).[4] (C.R. at 41.)

On April 27, 2023, the Board sent Petitioner a Notice of Parole Revocation Hearing (Notice). (C.R. at 34.) The Notice informed him of the date and time of his scheduled hearing, that he had a right to counsel and that the purpose of the hearing was to consider new criminal charges filed against him on September 12, 2016, relating to the manufacture, delivery, or possession with intent to manufacture or deliver, and intent to possess, a controlled substance by a person not registered, as well as the use and/or possession of drug paraphernalia. On April 28, 2023, this Notice was signed by both Petitioner and his counsel. (C.R. at 34.) Included with the Notice was a statement, which Petitioner also signed informing him of his rights at Parole Board Hearings, which included the following statement: "[t]he Board has scheduled a revocation hearing to determine whether you should be recommitted as a [CPV] because of the conviction(s) charged. You have a right to be heard by a panel." (C.R. at 35.) Petitioner requested that his hearing be conducted before a panel. (C.R. at 37.)

On May 12, 2023, the Parole Board held a panel revocation hearing at which Petitioner was represented by counsel. (C.R. at 43, 47.) At the hearing, Petitioner was handed a signed copy of his Notice dated April 28, 2023, which he acknowledged. He also expressly agreed to waive reading of the Notice. (Notes of

---

[4] Upon his return to DOC custody, Petitioner became available to serve the remaining time on his original sentence. *Id.*

Testimony (N.T.) at 6; C.R. at 48.) At this point, Petitioner was asked by the Hearing Examiner directly if he acknowledged the conviction as stated on the form, which Petitioner did. (N.T. at 6-7; C.R. at 48-49.) The Board then took testimony from Parole Agent Joseph Tkocs, who entered into evidence the district court judgment dated February 18, 2020, related to Petitioner's two 2018 federal drug convictions. (N.T. at 7; C.R. at 49.) During the hearing, neither Petitioner nor his counsel objected to admission of Petitioner's February 18, 2020 federal drug conviction or to the sufficiency of the Notice Petitioner had received. Petitioner then testified regarding his work history while on parole. He also testified that he had earned a Commercial Driver's License (CDL), and a forklift certification. He further described to the panel the volunteer work he performed while on parole and stated that he wished to start a business. (N.T. at 9-10; C.R. at 51-54.)

On May 22, 2023, a Revocation Hearing Report was issued, which recommended Petitioner be recommitted as a CPV and denied credit for time spent at liberty on parole due to his history of supervision failures while on parole. (C.R. at 69, 75.) On May 23, 2023, the Board issued a decision (mailed on June 1, 2023) recommitting Petitioner as a CPV to serve a recommitment period of twenty-four months with a new maximum sentence date of October 31, 2030. (C.R. at 95, 97.) The Board declined to award Petitioner credit for the time he spent at liberty on parole because of his history of supervision failures in probation and/or parole. (C.R. at 97-98.)

On July 6, 2023, Petitioner submitted a timely Administrative Remedies Form contesting the Board's May 23, 2023 decision on the grounds that the Board incorrectly calculated his maximum sentence date by illegally rescinding time credit he had been previously granted by the Board. He also averred that he was provided with insufficient notice of the charges to be considered at his revocation hearing because the Notice he received erroneously stated that the

5

hearing concerned his 2016 drug charges, while his parole ultimately was revoked due to his 2018 federal drug convictions. (C.R. at 99-100.) On January 12, 2024, the Board denied Petitioner's administrative appeal and affirmed the panel's recommitment decision. (Board Determination; C.R. at 120-122.)

Petitioner now petitions this Court for review.

## II. Issues

Petitioner first alleges that when the Board recommitted him as a CPV, revoked his parole, and recalculated his maximum sentence in its May 23, 2023 decision, it also "reached back" and rescinded time credit the Board had previously granted him. (Petitioner's Br. at 7.) He argues that this rescinding of previously granted credit for time spent at liberty on parole was illegal because in *Young v. Pennsylvania Board of Probation and Parole*, 225 A.3d 810 (Pa. 2020), our Supreme Court held that the only time previously granted credit is subject to forfeiture is when time credit has been granted between the last period of confinement and a parolee's new conviction. *Id.*

In response, the Board denies that Petitioner was ever granted credit for time he spent at liberty on parole. (Respondent's Br. at 10.) The Board contends that it decides, at its discretion, whether to grant credit for time spent at liberty on parole when it revokes an offender's parole and the offender is recommitted to an SCI. It does not have the authority under the Parole Code (Code), 61 Pa.C.S. § 6101- 6142, to award time credit when a parolee continues his parole. The Board argues that it awarded "confinement" credit to Petitioner from September 13, 2016, to September 20, 2017, the time period in which Petitioner was held on criminal charges that were ultimately dismissed. But it stated that the Board did not have occasion to determine whether to award credit for time spent at liberty on parole until Petitioner became available to begin serving his original sentence when he was returned to Pennsylvania authorities on February 14, 2023, after serving his federal

6

sentence. At that point, Petitioner's maximum sentence date was recalculated as October 31, 2030. In establishing this date, the Board denies rescinding credit previously granted to Petitioner.

Petitioner's second issue is whether the Board violated Petitioner's due process rights by providing Notice that its revocation hearing would consider one ground, *i.e.,* his 2016 drug charges, but that the Board revoked his parole on different grounds, *i.e.,* his 2018 federal drug convictions. (Petitioner's Br. at 7.) The Board, in response, argues that Petitioner received adequate notice of the reason for his revocation hearing when the Board issued an action notice recorded on June 27, 2018, stating that Petitioner was being detained pending disposition of criminal charges arising out of his May 11, 2018 arrest by federal authorities. (C.R. at 32.) It also argues that Petitioner, along with his counsel, appeared at his revocation hearing where he admitted to his 2018 federal drug conviction, his counsel expressly waived a reading of the Notice, and neither he nor his counsel raised any objection to the sufficiency of the Notice. (Respondent's Br. at 5.) The Board also contends that the Notice met the requirements set forth in 37 Pa. Code § 71.4(2) and because Petitioner failed to raise any objection before the Board at the parole revocation hearing, he is therefore precluded from raising it now in his brief. *Id.*

### III. Discussion[5]

*A. Whether the Board Improperly Rescinded Time Credit Previously Granted to Petitioner*

Petitioner alleges that the Board erred when calculating his maximum sentence date because it improperly rescinded time previously credited toward his sentence for periods during which he was at liberty on parole. Petitioner refers to two instances where he believes that he was previously awarded such credit by the Board. First, Petitioner states that he was arrested on March 5, 2013, and released on December 7, 2015, and that the Board did not extend Petitioner's sentence at that time. He therefore seems to conclude that he was granted credit off his sentence for his time spent at liberty on parole. (Petitioner's Br. at 15.) Petitioner then asserts that when he was arrested on September 11, 2016, and released on September 20, 2017, "[a]gain, the Board did not extend the maximum sentence. . . . [T]he Board continually credited Petitioner's sentence with time [credit] it now contends it is entitled to revoke." *Id.* Petitioner argues that in *Young*, 225 A.3d 810, our Supreme Court held that the Board lacked statutory authority to rescind a previous grant of credit for time spent at liberty on parole.

On June 28, 2023, Petitioner challenged the Board's May 23, 2023 decision by filing an Administrative Remedies Form in which he stated:

> The [Board] does not have the legislative authority to rescind time that was "given" or "credit" on parole at liberty. The [seven years] [eight months] 15 days of Backtime owed is incorrect. From 12/07/2015 to 9/11/2016 state drug arrest was [nine] months and [three]

---

[5] "This Court's review over actions of the Board is limited to determining whether the decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Bailey v. Pennsylvania Parole Board*, 323 A.3d 259, 263 n.8 (Pa. Cmwlth. 2024) (quoting *Brown v. Pennsylvania Board of Probation and Parole*, 184 A.3d 1021, 1023 n.5 (Pa. Cmwlth. 2017)). To the extent that this appeal involves statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Id.*

days was on parole at liberty. I was never convicted of those charges and was automatically reparoled on 9/20/2017. That time at liberty doesn't reflect on the Backtime owed calculations.

(C.R. at 100.)

In its response to Petitioner's Administrative Remedies Form, the Board stated:

To address your credit challenge, the Board recalculated your maximum date based on your December 7, 2015 release date and the maximum date on your original sentence of August 29, 2024. You owed 3188 days on your sentence the day you were released. As mentioned above, the Board's decision to recommit you as a CPV authorized the recalculation of your maximum date to reflect that you received no credit for the time spent at liberty on parole. 61 Pa.C.S. § 6138(a)(2). The Board denied you credit for the time spent at liberty on parole in this case, which means you owed 3188 days on your original sentence based on the recommitment. **In your correspondence, you claim the Board rescinded previously given credit for time spent at liberty on parole. The record reflects that the Board did not previously award credit for the previously mentioned time period.** However, you are entitled to confinement credit against that balance for 372 days from September 13, 2016[,] to September 20, 2017[,] during the time period you were held for criminal charges that were dismissed. Thus, you were left with 3188 – 372 = 2816 days on your original sentence.

The record reveals that on May 11, 2018, federal authorities arrested you following an indictment in the United States District Court, Western District of Pennsylvania docket number 2:18CR139. There is no indication that you posted bail. On May 14, 2018, a Board detainer was lodged against you. On February 18, 2020, you were sentenced to a new term of federal incarceration.

9

You completed your new federal sentence on February 14, 2023[,] and were subsequently returned to Pennsylvania custody thereafter. You were not entitled to any pre-sentence credit toward your original sentence as you were never held solely on the Board's detainer prior to sentencing. *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980). This means that you still owed 2816 days on your original sentence.

Because you were sentenced to federal incarceration, the [Code] provides that you serve the balance of the original sentence before serving the new sentence. 61 Pa.C.S. § 6138(a)(5.1). However, that provision is contingent upon federal authorities actually releasing you to return to the SCI. The Board has no mechanism to remove a federal inmate from serving a sentence in federal custody, nor can it compel federal authorities to comply with the statute. Thus, you became available to commence service of your original sentence on February 14, 2023 when you satisfied your new federal sentence. Adding 2816 days to February 14, 2023 yields a recalculated maximum date of October 31, 2030. Thus the Board properly recalculated your maximum date in this case.

(C.R. at 121-22) (emphasis added).

Under the Code, upon a parolee's recommitment as a CPV, he must serve the remainder of the term which he would have been required to serve had he not been paroled. *Boyd-Chisholm v. Pennsylvania Board of Probation and Parole*, 240 A.3d 1005, 1011 (Pa. Cmwlth. 2020). Section 6138(a) of the Code governs parole violations and provides in relevant part with respect to CPVs:

**(a) Convicted violators.—**
(2) if the offender's **parole is revoked**, the offender shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

10

(2.1) The board may, **in its discretion,** award credit to an offender recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence listed under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).

> (ii) The offender was recommitted under section 6143 (relating to early parole of offenders subject to Federal removal order).

61 Pa.C.S. § 6138(a)(2),(2.1) (emphasis added).

With respect to Petitioner's argument that the Board erred by rescinding previously given credit for time spent while at liberty on parole, the Board's Response to Petitioner's request for administrative relief correctly stated that the record reflects that the Board **did not** previously award credit for the previously mentioned time period. (C.R. at 121.) Significantly, Petitioner does not cite to any specific Board decision that awards him the credit he believes the Board rescinded. Rather, he relies upon the fact that the Board did not recalculate his maximum sentence date on December 7, 2015, when he was paroled. The Board also did not recalculate his maximum sentence date on September 20, 2017, when Petitioner was released from the Board's detainer and reparoled. However, the Board did recalculate his maximum sentence date when his parole was revoked by the Board in May of 2023 and he was recommitted as a CPV.

The reason the Board did not recalculate Petitioner's maximum date on the first two occasions is clear. At none of the earlier periods mentioned by Petitioner was his parole revoked after he was recommitted as a CPV. As the Board noted in its May 23, 2023 decision, Section 6138(a)(2.1) of the Code only

11

authorizes the Board to "award credit to an offender" for the time spent at liberty on parole, when that offender has been recommitted as a CPV. For Petitioner, this only occurred on one occasion after Petitioner was initially paroled in 2015.[6] When Petitioner was released after his September 12, 2016 arrest, the charges were dismissed; his parole was not revoked nor was he recommitted to an SCI. Therefore, the Board could not have granted him credit for any time he spent at liberty on parole before his September 12, 2016 arrest.

Similarly, after Petitioner was arrested and convicted on federal criminal charges, his state parole was not revoked nor was he recommitted to a state SCI until after he was returned to state custody following the completion of his federal sentence. It was only then, after his state parole was formally revoked and he was recommitted to an SCI, that the Board had authority to determine whether or not to grant Petitioner credit for any time spent at liberty on parole. At that time, in its May 23, 2023 decision, the Board revoked Petitioner's parole, recommitted him to an SCI as a CPV, declined to grant him credit for time spent at liberty on parole since 2015 due to his supervision failures while on parole, and recalculated his maximum sentence date to October 31, 2030.

For the above stated reasons, we affirm the Board's January 12, 2024 decision on this issue.

### B. Alleged Due Process Violation

Petitioner alleges that the Board violated his due process rights with respect to his parole revocation hearing by providing him Notice of one ground for the revocation of his parole, but then later revoked his parole on different grounds. According to Petitioner, he received a "Notice of Charges and Hearing," which his

---

[6] We note that when Petitioner was recommitted to an SCI as a CPV on June 25, 2013, the Board recalculated his new maximum sentence date to be August 29, 2024. (C.R. at 11-13.)

12

attorney signed on April 28, 2023, informing him that his parole revocation hearing was scheduled for May 12, 2023. The Notice further informed him that the hearing would consider "new criminal charges" and stated that on September 12, 2016, he was charged with "manufacture, delivery, or possession with intent to manufacture or deliver," "intent to possess a controlled substance by a person not registered" and "use/ possession of drug paraphernalia." (Petitioner's Br. at 8.) However, on May 23, 2023, the Board issued a decision recommitting Petitioner as a convicted parole violator based on his 2018 federal convictions for "[d]istribution and [p]ossession with the [i]ntent to [d]istribute [c]ocaine and [p]ossession with the [i]ntent to [d]istribute [h]eroin." (Petitioner's Br. at 9.)

In response, the Board asserts that the Notice provided to Petitioner did not violate his due process rights because the Notice satisfied both the notice requirements of 37 Pa. Code § 71.4 and constitutional due process requirements. The Board also asserts that because Petitioner failed to raise the issue of his receipt of defective notice at his revocation hearing, the issue of proper notice has been waived.[7] (Board's Br. at 7-9.)

In its Response to Petitioner's Administrative Remedies Form (mailed on January 12, 2024), the Board stated:

> First, the record reveals that while you were under the jurisdiction of the [Board] on February 18, 2020, in the United States District Court in the Western District of Pennsylvania (docket number 2:18 CR 139), you were sentenced to 75 months['] incarceration in a federal facility with four month[']s supervised release. On May 12, 2023, the Board conducted a panel revocation hearing for the aforementioned criminal conviction. You were provided notice of this hearing on April 28, 2023 and were provided counsel. During the hearing, you acknowledged the veracity of the new criminal conviction. As such, the

---

[7] In light of our disposition of this issue, we need not address the Board's waiver argument.

13

> Board was authorized to recommit you as a [CPV]. . . . Thus, the panel finds the conviction in a court of record and your acknowledgement of said conviction are sufficient to support the recommitment.

(C.R. at 120) (emphasis added).

In *Morrisey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court held that due process requires that the state provide adequate notice of a parole revocation hearing. There, the Court stated that the minimum requirements of due process include the following:

> (a) [W]ritten notice of the claimed violations of parole;
>
> (b) Disclosure to the parolee of evidence against him;
>
> (c) Opportunity to be heard in person and to present witnesses and documentary evidence;
>
> (d) The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
>
> (e) A 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
>
> (f) A written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrisey*, 408 U.S. at 488.

The Court also explained the purpose of the revocation hearing, stating:

> This hearing . . . must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that

14

circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.*

In Pennsylvania, the required notice to be given to a parolee who may be recommitted as a CPV is set forth in the Pa. Code at 37 Pa. Code § 71.4(2), which provides:

> (2) Prior to the revocation hearing, the parolee will be notified of the following:
>
> (i) The right to a revocation hearing, the right to notice of the exact date and the right at the revocation hearing to be heard by a panel.
>
> (ii) The right to retain counsel, the right to free counsel if unable to afford to retain counsel and the name and address of the public defender.
>
> (iii) There is no penalty for requesting counsel.
>
> (iv) The right to speak, to have voluntary witnesses appear and to present documentary evidence.
>
> (v) The purpose of the hearing is to determine whether to revoke parole and that if revocation is ordered, the parolee will receive no credit for time spent at liberty on parole.

37 Pa. Code § 71.4(2). In addition, this Court has held that "[a] notice must be clearly sufficient to enable a petitioner to prepare his defense." *Loach v. Pennsylvania Board of Probation and Parole*, 57 A.3d 210, 213-14 (Pa. Cmwlth. 2012).

In the present case, each of the requirements of Section 71.4(2) of the Code was met. Petitioner does not argue otherwise. The Notice provided to Petitioner, which included a separate document entitled "Inmate Rights at Parole Board Hearings," advised Petitioner of the exact date and time of his scheduled

15

revocation hearing and that he had the right at the revocation hearing to be heard by a panel. (C.R. at 34-35.) It informed him of his right to retain counsel, that he had the right to free counsel if he was unable to afford to retain counsel, and it provided him with the name and address of the public defender. *Id.* It also advised him that there was no penalty for requesting counsel. The Notice informed him that he had the right to speak at the hearing, to have voluntary witnesses appear and to present documentary evidence. It further advised him that the purpose of the hearing was to determine whether to revoke his parole and that if revocation were ordered, he would receive no credit for time spent at liberty on parole. After receiving the Notice, Petitioner separately signed both the Notice of Charges and Hearing and the notice of Inmate Rights at Parole Board Hearings. *Id.*

Despite meeting the legal requirements for due process, the Notice did mistakenly describe the charges to be considered at the hearing. The Notice indicated that "on 9/12/2016, you were . . . charged with "manufacture, delivery, or possession with intent to manufacture or deliver (F)[;] intentional possession of controlled substance by person not registered (M)[;] and use/possession of drug paraphernalia." (C.R. at 34.) This information related to state charges against Petitioner that were later dismissed. Petitioner's revocation hearing, however, was held to consider whether his parole should be revoked based upon his federal conviction in 2018 on charges of distribution and possession with the intent to distribute 28 grams or more of heroin and distribution and possession with the intent to distribute 28 grams or more of cocaine base. (C.R. at 76). Therefore, while the arrest date and the outcome of Petitioner's arrest were incorrect, the Notice specified the type of conduct, *i.e.*, felony drug violations, for which petitioner was ultimately recommitted. *See Mignone v. Pennsylvania Board of Probation and Parole*, 545 A.2d 483, 508-09 (Pa. Cmwlth. 1988) (finding that while the notice provided to petitioner was incorrect in some respects, it was sufficient to afford her notice of the

16

alleged basis for revocation to enable her to prepare a defense, particularly because it specified the conduct for which the petitioner was recommitted.)

While the Notice erroneously referred to certain 2016 drug "charges," we note that the statement of Inmate Rights at Parole Board Hearings which Petitioner received and signed on the same day he signed the Notice stated: "[t]he Board has scheduled a revocation hearing to determine whether you should be recommitted as [a CPV] **because of the convictions charged**." In addition, the Board, by its action recorded on June 27, 2018, informed Petitioner that the parole violation for which he was being detained was his arrest on May 11, on federal drug charges,[8] rather than his earlier 2016 arrest on drug charges that were ultimately dropped. (C.R. at 32.)

This Court has held that in order to satisfy due process, "[a] notice [of a parole violation hearing] must be clearly sufficient to enable a petitioner to prepare his defense." *Loach*, 57 A.3d at 213; *see also Mignone*, 545 A.2d 483 (same). In *Loach*, the notice of charges listed the wrong date of arrest and the wrong court of record. However, the notice accurately stated the appropriate date of conviction, convicted offense, date of sentence, and bill and term number. Under these circumstances we held that "the notice provided sufficient information to enable [petitioner] to prepare a defense" and that the "mistakes did not render the notice insufficient to meet procedural due process requirements." *Loach*, 57 A.3d 213-14. We have also held that in a **case where "a petitioner's parole was revoked because he was convicted of a crime while on parole . . . the purpose of the revocation hearing is not to determine whether the parolee has committed a crime, but whether parole is a viable means of rehabilitating and deterring**

---

[8] At this point, Petitioner's 2018 federal drug charges had become a federal drug conviction.

17

**future antisocial conduct.**" *Simmons v. Pennsylvania Board of Probation and Parole*, 459 A.2d 897, 898 (Pa. Cmwlth. 1983) (emphasis added).[9]

On May 12, 2023, the Board conducted a panel revocation hearing at which Petitioner was represented by counsel and where his counsel waived reading the Notice. (N.T., 5/12/2023 at 6; C.R. at 48.) At the hearing, Petitioner did not object when his February 18, 2020 federal conviction on charges involving distribution and possession with intent to distribute illegal drugs was admitted into evidence nor did Petitioner object to the sufficiency of the Notice he received at the hearing. (C.R. at 48-50, 66.) Petitioner also did not object when Parole Agent Joseph Tkocs testified and then entered into evidence the district court judgment dated February 18, 2020, related to Petitioner's two 2018 federal drug convictions. (N.T. at 7; C.R. at 49.) Instead, Petitioner testified regarding his work history while on parole and stated that he had earned a CDL, and a forklift certification while on parole. He further described to the panel the volunteer work he had performed and stated that he wished to start a business. (N.T. at 9-10; C.R. at 51-54.)

For the above stated reasons, we find that the written Notice provided to Petitioner in the present case was sufficient to allow Petitioner to prepare his defense by presenting to the Board relevant evidence on the issue of whether the Board should revoke his parole in spite of his acknowledged convictions.

---

[9] We have previously held that "it is now well-settled that a parolee cannot use a parole revocation hearing to relitigate issues which have already been determined against him in other forums. (citation omitted). The Board is not required to look beyond the face of [petitioner's] new [] convictions . . . ." *Chapman v. Pennsylvania Board of Probation and Parole*, 484 A.2d 413, 417 (Pa. Cmwlth. 1984).

18

## IV.  **Conclusion**

After careful review, we find Petitioner's arguments to be without merit.  We therefore affirm the Board's January 12, 2024 decision.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Barnes,

        Petitioner         :

                            :

        v.                :     No. 130 C.D. 2024

                            :

Pennsylvania Parole Board,    :

        Respondent   :

## ***ORDER***

AND NOW, this 3rd day of February, 2026, the January 12, 2024 decision of the Pennsylvania Parole Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge